## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

LESTER L. WASHINGTON                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:07cv00074-DPJ-JCS

JACKSON STATE UNIVERSITY, ET AL.                                       DEFENDANTS

### ORDER

This cause is before the Court on the cross motions for summary judgment of Plaintiff

Lester Washington and Defendants Jackson State University (JSU), Dr. Ronald Mason, Dr.

Richard Chiles, Dr. John Askew, Dr. Dorris Robinson-Gardner, Dr. Jeffrey Cassisi, Dr. Pamela

Banks, Dr. Sheree Watson, Dr. Sidney McLaurin, Ms. Regina Quinn, Esq., Dr. Joesph Martin

Stevenson, and Dr. Dollye Robinson.  Having considered the memoranda and submissions of the

parties, along with the pertinent authorities, the Court finds that Defendants' motion for summary

judgment should be granted, and Plaintiff's motion for summary judgment should be denied.

I.       **Facts/Procedural History**

Plaintiff is a former JSU graduate student who was enrolled in JSU's clinical psychology

doctoral program from 2001-2002, until he was dismissed in August of 2002 purportedly for

academic reasons.  On July 18, 2005, Plaintiff applied for readmission to JSU's clinical

psychology doctoral program.  The program had six to eight available positions for the 2006-

2007 entering class, and there were a total of twenty-nine applicants, including Plaintiff.  All

applications were submitted to the Faculty Admissions Committee for review.

The Committee employed essentially a two-step review process.  First, the Committee

evaluated the applicants for possible conflicts with the Ethical Principles of Psychologists and

the Code of Conduct of the American Psychological Association (APA).  The Committee then performed a quantitative and qualitative analysis of the applications, ensuring that each applicant met the admission criteria established for the 2006 admissions cohort.  Applicants were ranked based on each of the following factors: matriculation efficiency, rigor of undergraduate institution, computation of GRE verbal and quantitative scores, grade point average, research coursework, research dissemination, research participation, clinical experience, letters of recommendation, match of research interests, match of clinical interests, and personal statement. Upon reviewing Plaintiff's application, the Committee recommended denial of readmission due to concerns regarding possible violations of APA Ethical Principles and because Plaintiff ranked twenty-ninth out of twenty-nine applicants.  The Committee's recommendation was then accepted by the Psychology Department Chair, Dr. Richard Chiles, the Dean of the College of Liberal Arts, Dr. Dollye Robinson, and the Dean of the Graduate School, Dr. Dorris Robinson-Gardner.

Dr. Robinson-Gardner notified Plaintiff of JSU's denial of his application for readmission in letters dated June 2, 2006 and September 19, 2006.  Plaintiff then filed a charge of discrimination with the EEOC on October 31, 2006, alleging that JSU had retaliated against him for having filed a prior charge, grievance, and lawsuit against the University.  The EEOC issued Plaintiff a Dismissal and Notice of Rights on November 2, 2006.

Plaintiff filed the instant suit on February 8, 2007, alleging numerous causes of action, including claims under Titles VI and VII of the Civil Rights Act of 1964; §§ 1981 and 1983; violations of the Fifth and Fourteenth Amendment Due Process Clauses; violations of the Family

Educational Rights and Privacy Act of 1974 (FEPRA); and state law claims for slander, libel, and defamation.[1]

## II.    Analysis

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.    Discovery

"Rule 56 does not generally require any discovery prior to a grant of summary judgment, and thus, if a party cannot adequately defend such a motion without further discovery, Rule 56(f) is the proper remedy."  *Howell v. Ferguson Enters., Inc.*, 93 F. App'x 12, 14 (5th Cir. 2004) (citing *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996)).  Under Rule 56(f), "a party seeking additional time to conduct discovery must 1) request extended discovery prior to

---

[1] Plaintiff submitted hundreds of pages of material both in response to Defendants' motion for summary judgment and in support of his own motion for summary judgment.  In these documents, Plaintiff spends considerable effort rehashing the facts and perceived errors of a previous suit he filed against JSU and many of the individual Defendants, *Washington v. Jackson State University*, 532 F. Supp. 2d 804 (S.D. Miss. 2006), *aff'd*, 244 F. App'x 589, 592 (5th Cir. 2007), *cert. denied*, No. 07-9997, 2008 WL 1848160 (U.S. Apr. 28, 2008).  The Court has carefully examined the entirety of Plaintiff's submissions, keeping in mind the liberal construction standards afforded to pro se plaintiffs, in an attempt to ascertain the issues pertinent to this action.  All relevant, credible evidence has been given due consideration.  However, the Court declines Plaintiff's apparent invitation to revisit the decisions rendered in his prior suit.  As the Plaintiff accurately observes in his Complaint, the present action concerns only post-October 2002 causes of action, which were not addressed in Plaintiff's previous litigation.  Complaint at 16.

3

the court's ruling on summary judgment; 2) place the court on notice that further discovery is

being sought; and 3) demonstrate to the court with reasonable specificity how the requested

discovery pertains to the pending motion." *Id.* (citation omitted).  Moreover, "[t]he party seeking

a continuance must show how additional discovery will create a genuine dispute as to a material

fact and may not simply rely on vague assertions that additional discovery will produce needed,

but unspecified facts.  These requirements apply even to *pro se* litigants." *Hill v. Tahmakera*, 38

F.3d 568, 1994 WL 574175, at *1 (5th Cir. 1994) (citations omitted).  "The decision to grant or

deny a Rule 56(f) motion is within the sound discretion of the district court." *Johnson v. Hinds*

*County, Miss.*, 237 F.3d 632, 2000 WL 1701835, at *1 (5th Cir. 2000) (unpublished table

decision).

       In the present case, Plaintiff has not submitted a formal Rule 56(f) affidavit and request

for a continuance.  However,

> [a] nonmoving party's failure to tailor its request for additional discovery to fit Rule
> 56(f)'s precise measurements does not necessarily foreclose the court's consideration
> of the request.  Although the preferred procedure is to present an affidavit in support
> of the requested continuance, so long as the nonmoving party indicates to the court
> by some equivalent statement, preferably in writing[,] of its need for additional
> discovery, the nonmoving party is deemed to have invoked the rule.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266–67 (5th Cir. 1991) (internal quotations

and citations omitted).  Plaintiff has certainly argued to the Court, in writing, that he feels the

Defendants are attempting, through their motion for summary judgment, to have the case

prematurely dismissed without discovery.  *See, e.g.*, Plaintiff's Emergency Motion for Relief by

the Chief Justice at 9 ("[T]he [D]efendants are seeking to pre empt [sic] the case management,

discovery, and other frap processes to save them time, money, the answering of motions, and

4

litigation to again deny the plaintiff justice . . . ."); Plaintiff's Motion To Enter Amended and

Combined Response and Memorandum in Opposition to the Defendants' Motion for Summary

Judgment at 1 ("There are <u>more than</u> [fifty] genuine issues of fact for trial, more than [thirty]

causes of actions, than [twenty] material facts for trial, but without discovery and to preempt trial

facts, [one hundred] total violations, in the case that the attorneys are denying all facts in the case

and trying to avoid full disclosure, discovery, full due process, a jury trial, as they did in the first

case and refused to answer interrogatories, admissions, and production of information."}.

Accordingly, the Court will interpret Plaintiff's arguments as a request for a Rule 56(f)

continuance.[2]

Because Plaintiff requested additional discovery prior to the Court's ruling on

Defendants' motion for summary judgment and indicated to the Court that further discovery is

being sought, he has satisfied the first two requirements for a Rule 56(f) continuance.   Thus, the

question before the Court is whether Plaintiff has demonstrated with reasonable specificity how

the requested discovery will create a genuine dispute as to a material fact.  The Court finds that

Plaintiff has not made this showing.  Even assuming the liberal construction standards applied to

documents submitted by pro se plaintiffs, Plaintiff has submitted only vague assertions that

additional discovery will produce needed, but unspecified, facts.  "The intent of Rule 56(f) of the

Federal Rules of Civil Procedure is not to open the discovery net to allow a fishing expedition."

*Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1029 (5th Cir. 1983) (internal quotations

and citation omitted).

---

[2] Interestingly, after making this argument, Plaintiff filed his own motion for summary judgment, asserting that based on the facts he submitted in this case and his previous litigation, he is entitled to judgment as a matter of law on all claims.

> A bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f) . . . .  Rule 56(f) cannot be relied upon to defeat a summary judgment motion where the result of a continuance to obtain further information would be wholly speculative.

*Id.* (internal quotations and citation omitted).  Thus, to the extent Plaintiff makes a Rule 56(f) request, that request is denied, and the Court will consider the merits of the parties' cross motions for summary judgment.

    B.    <u>Title VI Claims</u>

Plaintiff appears to accuse Defendants of both racial discrimination and retaliation in violation of Title VI of the Civil Rights Act of 1964.  The Court will first consider Plaintiff's Title VI claims against the individual Defendants in their individual capacities.  Title VI provides that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance."  42 U.S.C. § 2000d (2003).[3]  Thus, "the text of Title VI . . . precludes liability against those who do not receive federal funding, including individuals."  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 (11th Cir. 2003) ("It is beyond question, therefore, that individuals are not liable under Title VI."); *see also Gomiller v. Dees*, No. 4:06cv33-D-B, 2007 WL 1031359, at *3 (N.D. Miss. Mar. 29, 2007); *Washington*, 532

---

[3] The regulations implementing Title VI further explain that no recipient of federal funds "shall intimidate, threaten, coerce, or discriminate against any individual . . . because he has made a complaint, testified, assisted, or participated in . . . an investigation, proceeding, or hearing" under Title VI.  34 C.F.R. § 100.7(e) (2007).

F. Supp. 2d at 811.  There is no evidence rebutting the individual Defendants' claims that they do not receive federal financial assistance; accordingly, the Court dismisses Plaintiff's Title VI claims against them in their individual capacities.

Turning to the Title VI allegations against JSU and the individual Defendants in their official capacities,  "[t]o state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaged in racial discrimination; and (2) the entity involved receives federal funding."  *Gomiller*, 2007 WL 1031359, at *3 (citing *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996)).  "The Court's inquiry into intentional race discrimination is essentially the same for individual actions under §§ 1981 and 1983, Title VI[,] and Title VII."  *Baldwin v. Univ. of Tex. Med. Branch*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996); *see also Vesome v. Atchinson Hosp. Ass'n*, No. 06-3353, 2008 WL 2053069, at *9 (10th Cir. May 15, 2008); *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007); *Manning v. Temple Univ.*, 157 F. App'x 509, 513 (3d Cir. 2005); *Quarles v. Oxford Mun. Separate Sch. Dist.*, 868 F.2d 750, 754 n.3 (5th Cir. 1989); *Washington*, 532 F. Supp. 2d at 810.

> A plaintiff can prove a claim of intentional discrimination [or retaliation] by either direct or circumstantial evidence.  Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green* . . . .  First, the plaintiff must establish a prima facie case of discrimination.  Second, the [defendant] must respond with a legitimate, nondiscriminatory reason for its decision.  This burden on the [defendant] is only one of production, not persuasion, involving no credibility assessments.  Third, if the [defendant] carries its burden, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the fact finder must decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination].  In making this showing, the plaintiff can rely on evidence that the [defendant's] reasons were a pretext for unlawful discrimination. [T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual. . . . Thus, a plaintiff's prima

> facie case, combined with sufficient evidence to find that the [defendant's] asserted
> justification is false, may permit the trier of fact to conclude that the [defendant]
> unlawfully discriminated.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal quotations and

citations omitted). Furthermore, "[a] plaintiff may establish pretext by showing that a

discriminatory motive more likely motivated [the defendant's] decision, such as through

evidence of disparate treatment, or that [the defendant's] explanation is unworthy of credence."

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (internal quotations and

citation omitted). Because Plaintiff has not presented any "direct evidence" of discrimination,

the Court will consider Plaintiff's Title VI discrimination and retaliation claims under the

*McDonnell Douglas* burden-shifting framework.[4]

> 1.    *Discrimination*

To state a prima facie case of discrimination, the Plaintiff must establish that: (1) he

belongs to a protected class; (2) he applied for and was qualified for readmission into the clinical

psychology doctoral program; (3) he was rejected; and (4) similarly situated, non-protected

applicants for readmission were treated more favorably. *See Burrell v. Dr. Pepper/Seven Up*

*Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *Paasewe v. Ohio Arts Council*, 74 F.

App'x 505, 508 (6th Cir. 2003). Assuming arguendo that Plaintiff has satisfied the first three

elements of a prima facie case, Plaintiff's discrimination claim must fail because he has not

satisfied the fourth element—disparate treatment. "To establish disparate treatment, a plaintiff

must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was

---

[4] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus
without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th
Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

treated differently." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)).

Plaintiff submitted an exhibit he titled "Overview and Expanded Summary Key Exhibit

Sections for Summary Judgment. Revised," in support of his response to Defendants' motion for

summary judgment.  He states therein, "Unlike Herndon and Gear heart (whites), no African

Americans . . . have been allowed readmission to matriculate towards their doctoral

graduations."[5]  However, conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for

trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*,

10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc).  Accordingly, because Plaintiff has offered no competent, record evidence to show that

"Herndon and Gear heart" were in fact "similarly situated," non-protected applicants for

readmission, who were treated more favorably than Plaintiff "under nearly identical

circumstances," his Title VI race discrimination claims should be dismissed.  *See Nzeda v. Shell*

*Oil Co.*, 228 F. App'x 375, 376 (5th Cir. 2007); *Ducksworth v. Morgan Bros. Millwork, Inc.*, No.

2:07cv2-KS-MTP, 2007 WL 2684014, at *2 (S.D. Miss. Sept. 7, 2007).[6]

---

[5] Although this appears to be the most specific allegation in support of Plaintiff's prima facie case, his submissions are replete with conclusory assertions that white students were readmitted to JSU's clinical psychology doctoral program, whereas no black students were allowed to reenter.

[6] Upon a motion for summary judgment, the Court may consider all competent, record evidence, which includes evidence such as affidavits, filed depositions, filed answers to interrogatories, or filed admissions.  *Scott v. DMN Inc.*, 31 F. App'x 836, 2002 WL 243295, at *1 (5th Cir. 2002) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 n.17 (5th Cir. 1991)).  "Unsworn pleadings, memoranda, or the like are not" proper record evidence.  *Larry v. White*, 929 F.2d 206, 211 (5th Cir. 1991).  Moreover, "[u]nsubstantiated assertions, improbable

Finally, even if Plaintiff could somehow demonstrate a prima facie case, he has failed to offer any credible, record evidence of pretext or that his race, African-American, was a motivating factor in the denial of readmission to JSU.  *See, e.g.*, *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (affirming summary judgment when plaintiff failed to prove pretext or that race was a motivating factor).

       2.    *Retaliation*

There are three elements to a prima facie case of retaliation: (1) that the plaintiff engaged in a protected activity; (2) that an adverse action occurred, and (3) a causal link between the protected activity and the adverse action.  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).  Defendants concede the existence of elements one and two, but dispute the presence of a causal connection sufficient to establish a prima facie case of retaliation.  The Court agrees.  However, even assuming that Plaintiff has established a sufficient causal connection, and therefore a prima facie case, Plaintiff has not presented sufficient evidence to establish that he would have been readmitted into the clinical psychology doctoral program but for his engaging in protected activity.  *See Strong v. Univ. Healthcare Sys.*, 482 F.3d 802, 806 (5th Cir. 2007) (concluding that after defendant states a legitimate, non-retaliatory reason for its action, the ultimate burden rests on the plaintiff to establish pretext under a "but for" standard).

---

inferences, and unsupported speculation are not competent summary judgment evidence. . . . [H]earsay evidence, unless it falls within a recognized exception, is [also] not competent summary judgment evidence."  *Tarver v. Colonial Life & Accident Ins. Co.*, No. 3:06CV82-HTW-JCS, 2007 WL 551766, at *1 (S.D. Miss. Feb. 21, 2007) (internal citations omitted).

Defendants contend that Plaintiff was denied readmission "because of concerns about possible violations of APA ethical principles and because there were many applicants far better qualified for the few positions in the doctoral program than was Plaintiff."  Defendants' Brief in Support of Motion for Summary Judgment ("Defendants' Brief") at 12.  Plaintiff attempts to rebut Defendants' legitimate, non-retaliatory reasons with proof that he was better qualified for readmission than those ultimately selected.  "For [a plaintiff] to establish pretext in this way, he must raise a fact issue as to whether he was 'clearly better qualified' and not merely 'similarly qualified.'" *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 395 (5th Cir. 2008) (citing *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).  To demonstrate that he is "clearly better qualified," a plaintiff must "show that the 'disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Gillaspy v. Dallas Indep. Sch. Dist.*, No. 06-11204, 2008 WL 2037257, at *6 (5th Cir. May 13, 2008) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

Here, Plaintiff does not focus his qualifications arguments on the comparative qualifications of individual applicants offered admission into the clinical psychology doctoral program at the time Plaintiff was denied readmission.  Instead, he argues generally that as an applicant for readmission who was currently enrolled in Colorado State University, an institution he insists is far superior to JSU, he was more qualified than first time applicants for admission. *See, e.g.*, Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Response") at 29, 33–35, 54.  Plaintiff also cites to his two masters degrees, his co-authorship of two statistical surveys, his membership and leadership in various school and community

11

organizations, and his years of experience in different employment positions as bases for his superior qualifications. *See id.* at 29–30.

Although the additional credentials presented by Plaintiff, including his publications and club memberships, are certainly relevant, they do not appear to be of "'such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Gillaspy*, 2008 WL 2037257, at *6; *see also Bacas v. Harvey*, No. 07-50257, 2008 WL 749546, at *2 (5th Cir. Mar. 19, 2008); *Sabzevari*, 264 F. App'x at 395 (concluding that because recruiting is only one criteria among many defendant considered when promoting candidates, even if plaintiff had established that he had superior recruiting skills, it "would not raise an issue as to whether he was clearly better qualified on the whole"); *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 454 (5th Cir. 2007).

Finally, Plaintiff must rebut each non-retaliatory reason offered by the Defendants. *Wallace*, 271 F.3d at 220. Defendants' reliance on APA ethical principles is a legitimate, non-retaliatory reason for the decision for which there is insufficient proof of pretext. *See Howell v. Exxon Corp.*, 103 F.3d 125, 1996 WL 731434, at *4 (5th Cir. 1996). Consequently, Plaintiff has failed to create a genuine issue of material fact regarding pretext, and Plaintiff's Title VI retaliation claims should be dismissed.[7]

---

[7] In addition to his arguments regarding qualifications, Plaintiff also maintains that he was unfairly compared to the other applicants for admission because he "never received the [twenty-nine] questions that were given to other students." Plaintiff's Response at 33. Plaintiff has not, however, submitted any record evidence that other applicants to the clinical psychology doctoral program were actually given twenty-nine questions to answer as a part of their application. Defendants have argued that there were twenty-nine *applicants* for the clinical psychology doctoral program and that Plaintiff was ranked twenty-ninth out of those twenty-nine applicants,

C.     Title VII Claims

Plaintiff alleges that Defendants retaliated against him in violation of Title VII of the Civil Rights Act of 1964 by denying him readmission into the JSU clinical psychology doctoral program, and thereby dening him re-employment as a graduate teaching or research assistant. Plaintiff's Response at 32.  Defendants contend, however, that Plaintiff's Title VII claims must be dismissed because Plaintiff has never had an employment relationship with any of the Defendants.

Plaintiff is correct in asserting that there are some circumstances under which courts have considered graduate research and teaching assistants to be employees for Title VII purposes.  *See, e.g.*, *Cuddeback v. Florida Board of Education*, 381 F.3d 1230, 1234–35 (11th Cir. 2004). However, Plaintiff's Title VII claim must fail first because he has presented no competent, record evidence that JSU was offering a graduate assistant position.  *Burrell*, 482 F.3d at 412 (explaining that as part of a prima facie case of discriminatory failure to promote under Title VII, a plaintiff must show "he applied for and was qualified for a position for which applicants were being sought").  In addition, the Court has reviewed Plaintiff's application for readmission, and it does not appear to contain any provisions regarding graduate research or teaching assistant positions.  Consequently, Plaintiff's Title VII claims against the Defendants should be dismissed.

D.     §§ 1981 and 1983 Claims

Plaintiff asserts that Defendants engaged in race discrimination in violation of §§ 1981 and 1983 in denying him readmission to the clinical psychology doctoral program.  "The

_____

but despite a diligent review of the record, the Court has found no support for Plaintiff's contention that other applicants were given a list of twenty-nine questions to answer.

13

Eleventh Amendment to the United States Constitution bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Jordan v. Miss. State Dep't of Health*, No. 3:06-cv-233-WHB-LRA, 2007 WL 2344963, at *2 (S.D. Miss. Aug. 16, 2007) (internal quotations and citations omitted). Moreover, "[t]he scope of the immunity provided by the Eleventh Amendment extends to any state agency or entity deemed an alter ego or arm of the state." *Id.* (internal quotations and citation omitted). JSU is an arm of the state of Mississippi and is, therefore, entitled to Eleventh Amendment immunity. *Washington*, 532 F. Supp. 2d at 814 (citing *Jagnandan v. Miss. State Univ.*, 373 So. 2d 252, 253 (Miss. 1979) (holding that state institutions of higher learning are arms of the state)). Thus, Plaintiff's §§ 1981 and 1983 claims against JSU are barred. *See Jordan*, 2007 WL 2344963, at *3 (citing *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999) ("Section 1983 does not abrogate Eleventh Amendment immunity."); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1053 (5th Cir. 1998) ("The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983."); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity.")).

Regarding the individual Defendants, "'a suit against a public official in his official capacity is in effect a suit against the local government entity he represents.'" *Morgan v. Mississippi*, No. 2:07cv15-MTP, 2008 WL 410645, at *4 (S.D. Miss. Feb. 12, 2008) (quoting *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987)). Thus, Plaintiff's §§ 1981 and 1983 claims against the individual Defendants in their official capacities must also be dismissed.

Eleventh Amendment immunity does not, however, extend to the individual Defendants in their individual capacities. *See Ellis v. Miss. Dep't of Health*, No. 4:07CV81, 2008 WL 2007153, at *6 (N.D. Miss. May 8, 2008). Instead, because the individual Defendants were acting as governmental officials performing a discretionary function, they may be entitled to qualified immunity for their actions in denying Plaintiff readmission to the clinical psychology program.

"Qualified immunity shields government officials performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Huang v. Harris County*, 264 F.3d 1141, 2001 WL 822534, at *5 (5th Cir. 2001) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001)). "[The] court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. First, [the court] determine[s] whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (citations omitted); *see also Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007). "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008). If the first prong is satisfied, however, the court

> next considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

15

*Freeman*, 483 F.3d at 411.  "Once a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to show that the defense is inapplicable."  *Blackwell*, 2008 WL 1848119, at *2 (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Under the qualified immunity standard set out above, the Court must first determine whether, viewing the summary judgment evidence in the light most favorable to Plaintiff, Defendants violated Plaintiff's constitutional rights.  The right to be free from disparate treatment based on race is a clearly established constitutional right.  *Martinex v. Val Verde County Hosp.*, 46 F.3d 66, 1995 WL 29271, at *1 (5th Cir. 1995) ("[C]onstitutional prohibitions against race and ethnic discrimination are so clearly established that a reasonable person would be aware of these rights."); *see also Felton v. Polles*, No. 3:99CV200LN, 2000 WL 33968259, at *2 (S.D. Miss. Jan. 14, 2000).  However, as discussed above regarding Plaintiff's Title VI discrimination claims, Plaintiff has presented no credible, record evidence that in denying him readmission to JSU's clinical psychology doctoral program, Defendants treated him differently because of his race.

Furthermore, "[i]n order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race."  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citations omitted).  "Likewise, a cause of action for racial discrimination . . . under § 1981[] requires the plaintiff to demonstrate intentional discrimination."  *Id.* (citations omitted).  Here, diligent review of Plaintiff's voluminous submissions reveals no credible evidence of discriminatory, racial animus on the part of the individual Defendants.  As such, Plaintiff has not produced sufficient evidence to create a

genuine issue of material fact as to whether the Defendants' conduct violated Plaintiff's

constitutional rights, and the individual Defendants are therefore entitled to summary judgment

based on qualified immunity as to Plaintiff's §§ 1981 and 1983 claims against them in their

individual capacities. *See Jackson v. Houston Indep. Sch. Dist.*, 189 F.3d 467, 1999 WL 511478,

at * 7 (5th Cir. 1999); *Coleman*, 113 F.3d at 533–34; *Hodges v. City of Houston*, 35 F.3d 562,

1994 WL 500425, at *2 (5th Cir. 1994); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274–75 (5th Cir.

1994); *Felton*, 2000 WL 33968259, at *3–4.

      E.    <u>Due Process Claims</u>

      Plaintiff also appears to allege that Defendants violated his Fifth and Fourteenth

Amendment due process rights by refusing to hold a "grievance hearing and meeting" regarding

his denial of readmission to the doctoral program. "The requirements of procedural due process

apply only to the deprivation of interests encompassed by the Fourteenth Amendment's

protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569

(1972). Accordingly, to succeed on his due process claims, Plaintiff must first "identify a

property or liberty interest triggering due process protections." *Marinello v. Bushby*, 78 F.3d

582, 1996 WL 60571, at *2 (5th Cir. 1996) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470

U.S. 532, 538–39 (1985)).

> To have a property interest in a benefit, a person clearly must have more than an
> abstract need or desire for it. He must have more than a unilateral expectation of it.
> He must, instead, have a legitimate claim of entitlement to it. . . . Property interests
> . . . are not created by the Constitution. Rather they are created and their dimensions
> are defined by existing rules or understandings that stem from an independent source
> such as state law-rules or understandings that secure certain benefits and that support
> claims of entitlement to those benefits.

*Bd. of Regents of State Colls.*, 408 U.S. at 577. Additionally,

17

> "[a] state creates a protected liberty interest by placing substantive limitations on official discretion." . . . If the state decision-maker is not "required to base its decisions on objective and defined criteria," but can deny relief for any constitutionally permissible reason or for no reason at all, "the [s]tate has not created a constitutionally protected liberty interest."

*Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518, at *2 (5th Cir. 1995) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). "In the context of higher education, as in the area of public employment, the central inquiry for purposes of liberty interest analysis is whether the state's actions have effectively foreclosed a person's opportunity for education or employment in a particular area." *Tobin v. Univ. of Me. Sys.*, 59 F. Supp. 2d 87, 92 (D. Me. 1999).

In this action, Plaintiff has not cited any statutory, regulatory, jurisprudential, or other authority for the proposition that he had a constitutionally protected property or liberty interest in readmission to the JSU clinical psychology doctoral program. Moreover, the Court's independent review of the case law in this area demonstrates that prospective students generally possess no liberty or property interest in admission to graduate school. *See, e.g.*, *Barnes*, 1995 WL 10518, at *2 ("Education-particularly post-graduate or professional education-is not a right afforded either explicit or implicit protection under the Constitution."); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 611–14 (E.D. Va. 2004); *Tobin*, 59 F. Supp. 2d at 91 ("The [c]ourt is convinced that [p]laintiff, who was neither accepted by nor enrolled at the [l]aw [s]chool, can assert no more than a 'unilateral expectation' of admission, as opposed to a 'legitimate claim of entitlement' to it. That applicants for admission to professional or graduate school do not have a property interest in admission is well established."); *Sternberger v. Jones*, No. 95-115, 1995 WL 377057, at *3 (E.D. La. June 23, 1995) ("While a student already admitted into a school may have a property interest in his continued enrollment, a prospective student has no constitutional

18

due process right to a hearing to prove his qualifications and no constitutional right to admission." (citations omitted)); *Phelps v. Washburn Univ. of Topeka*, 632 F. Supp. 455, 459 (D. Kan. 1986) (finding that "denial of admission, and a resulting denial of a grievance process, without an underlying charge of dishonesty [against the student] or publication of [the] reasons for such denial, does not rise to a liberty interest"); *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 618–19 (S.D.N.Y. 1980) ("Rejection of an applicant for admission is a far cry from dismissal once a person has already been admitted. . . . [A] court should be more reluctant to interfere where the 'interest' involved has not even risen to that of an attending student."); *Ramos v. Tex. Tech Univ.*, 441 F. Supp. 1050, 1055 (N.D. Tex. 1977), *aff'd*, 566 F.3d 573 (5th Cir. 1978) ("Not having been accepted, plaintiff's 'unilateral expectation' of admission does not rise to the level of a 'legitimate claim of entitlement'; plaintiff has no interest in 'property' upon these facts."); *Szejner v. Univ. of Alaska*, 944 P.2d 481, 486 (Alaska 1997) ("A person does not have a property interest in admission to graduate school.  Moreover, the denial of admission to graduate school, without an underlying charge of dishonesty [against the student] or publication of reasons for such denial, does not rise to a liberty interest." (internal quotations and citations omitted)); *Baker v. LSU Health Scis. Ctr. of Prof'l Educ.*, 889 So. 2d 1178, 1182 (La. Ct. App. 2004) (concluding that medical student had no property or liberty interest in "prospective" admission to the LSU Medical School).  Because Plaintiff has not established the existence of a property or liberty interest triggering due process protections, his due process claims should be dismissed.

F.      FERPA Claims

Plaintiff argues that Defendants violated the FERPA in not allowing Plaintiff to add

qualifiers to his educational records.  The FERPA does not, however, provide for a private right

of action to enforce its provisions.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002);

*Washington*, 532 F. Supp. 2d at 814.  Accordingly, Plaintiff's FERPA claims should be

dismissed.

G.      State Law Claims

Plaintiff asserts state law causes of action against Defendants for slander, libel, and

defamation.[8]  In 2001, JSU's clinical psychology doctoral program received accreditation from

the APA.  In order to maintain accreditation, the doctoral program must undergo periodic review.

As part of the review process, the APA requires JSU to submit a Self-Study containing data

regarding "student matriculation, faculty qualifications, course listings, practicum placements,

student statistics, student survey results, graduate employment, and program policies and

procedures."  Defendants' Brief at 7.  In a Self-Study prepared in 2004, JSU made reference to

"Plaintiff's status as a former student by use of the last four digits of his social security number."

*Id.*  The study further stated that Plaintiff left the program before receiving his degree due to

"academic difficulties, requested leave of absence, never returned."  *Id.*  JSU officially submitted

---

[8] Although Plaintiff lists slander, libel, and defamation as causes of action, it appears to
the Court that Plaintiff's factual averments allege a defamation claim for libel rather than slander,
as the claim relates to a written publication.  *See generally Funderburk v. Johnson*, 935 So. 2d
1084 (Miss. Ct. App. 2006) (citing *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001))
("Defamation is divided into two torts, including libel for written defamation and slander for oral
ones.").

the study to the APA on August 31, 2004.  Even if this publication could constitute defamation,

Plaintiff's claims are time-barred.[9]

Mississippi Code Annotated § 15-1-35 provides that "all actions for slanderous words

concerning the person or title, for failure to employ, and for libels, shall be commenced within

one (1) year next after the cause of such action accrued and not after."  Under Mississippi

common law, "[a] cause of action accrues for purposes of the statute of limitations on the date of

the first publication of the allegedly defamatory material."  *Mize v. Harvey Shapiro Enters., Inc.*,

714 F. Supp. 220, 224 (N.D. Miss. 1989) (citing *Wildmon v. Hustler Magazine, Inc.*, 508 F.

Supp. 87, 88–89 (N.D. Miss. 1980)).  Thus, under this single publication rule,

> the one year limitations period in defamation actions begins to run on the date the
> allegedly defamatory material is first published to a third person or to the public at
> large; further, as to any single publication of defamatory material, there may be only
> one cause of action in which damages are recoverable.  . . . [M]ultiple publications
> of the same work do not ordinarily reset the statute of limitations; only subsequent
> editions or reprintings, or a rebroadcast of the same story, are considered new
> publications that trigger a new cause of action and commence a new statute of
> limitations period.

*Lane v. Strang Commc'ns Co.*, 297 F. Supp. 2d 897, 900 (N.D. Miss. 2003) (citations omitted).

The Mississippi Supreme Court has explained the rationale behind this rule as follows:

> Since the gravemen of the offense is not the knowledge by the plaintiff nor the injury
> to his feelings but the degrading of reputation, the right accrue[s] as soon as the paper

---

[9] To state a defamation claim under Mississippi law, "the words employed must have
clearly been directed toward the plaintiff."  *Ferguson v. Watkins*, 448 So. 2d 271, 275 (Miss.
1984).  A statement that fails to sufficiently identify the plaintiff will not constitute defamation.
*See Gales v. CBS Broad., Inc.*, 269 F. Supp. 2d 772, 783 (S.D. Miss. 2003) (granting summary
judgment when allegedly false statements did not sufficiently identify plaintiffs).   Whether
publishing the last four digits of Plaintiff's social security number sufficiently identified him as
the subject of the allegedly false statement is doubtful, but the issue was not addressed by the
parties, and is otherwise unnecessary because the claim is time-barred.

> [is] exhibited to third persons in whom alone such repute is resident.  The tort is then complete even though the damages may continue or even accumulate.

*Forman v. Miss. Publishers Corp.*, 14 So. 2d 344, 347 (Miss. 1943).

Here, the JSU clinical psychology department first published its Self-Study to the APA on August 31, 2004; thus, the one-year statute of limitations for Plaintiff's libel and defamation claims began to run on that date and expired on August 31, 2005.  Plaintiff did not file his Complaint until February 8, 2007, well after the expiration of the one-year statute of limitations for any libel or defamation claim based on the JSU Self-Study.  Although Plaintiff argues that the defamation in this case is ongoing and is repeated each time Defendants seek accreditation, "multiple publications of the same work do not ordinarily reset the statute of limitations," and Plaintiff has not presented any competent, record evidence that the Self-Study has been republished so as to "trigger a new cause of action and commence a new statute of limitations period."  *Lane*, 297 F. Supp. 2d at 900.

Finally, Plaintiff makes what appears to be a tolling argument regarding the expiration of the one-year statute of limitations for the Self-Study.  In his memorandum in support of his response to Defendants' motion for summary judgment, Plaintiff asserts that he timely filed suit in the United States District Court for the Southern District of Colorado regarding the Self-Study, that his Colorado case was dismissed without prejudice, and that within a year after the dismissal of the Colorado suit, he timely refiled his claims regarding the Self-Study in the instant suit.  *See* Plaintiff's Memorandum to Accompany the Response in Opposition to Defendants' Motion for Summary Judgment at 71.  However, the JSU Self-Study was first published to the APA on August 31, 2004, and record evidence submitted by Plaintiff shows that Plaintiff filed suit in

Colorado in March of 2006, more than one year after the Self-Study's original publication. Accordingly, Plaintiff's tolling argument is unavailing, and Plaintiff's libel and defamation claims should be dismissed as time-barred.[10]

       H.     <u>Additional Claims</u>

In addition to the claims already discussed, Plaintiff's Complaint cites a number of statutes, regulations, code sections, and other provisions, many of which appear inapplicable or otherwise lack merit.[11]  As explained above, the Court has carefully reviewed all of Plaintiff's submissions and has attempted to focus on the issues pertinent to this action.  The Court therefore dismisses any additional causes of action not specifically addressed above.

**III.    Conclusion**

The Court has considered and rejected the remaining arguments raised in Plaintiff's submissions.  Accordingly, for the reasons stated herein, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.  A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

       **SO ORDERED AND ADJUDGED** this the 14th day of July, 2008.

                             *s/ Daniel P. Jordan III*
                             UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff has not argued the discovery rule and has not submitted any evidence suggesting that it would apply.  *See generally Hudson v. Palmer*, No. 2006-CP-00940-COA, 2007 WL 242559 (Miss. Ct. App. Sept. 4, 2007).

[11] For example, in his Complaint, Plaintiff suggests a violation of Title IX of the Education Amendments Act of 1971, 20 U.S.C. § 1681 (2000), based on Defendants alleged maintenance of a racially hostile educational environment.  Complaint at 16.  By its own terms, however, Title IX applies only to discrimination based on sex.